FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 18, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLIE M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | No. 2:20-CV-00039-JTR <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 17, 18. Attorney D. James Tree represents Charlie M. (Plaintiff); Special Assistant United States Attorney David Burdett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

# JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on January 15, 2014, alleging disability since January 1, 2010,[1] due to fibromyalgia, depression, and thyroid issues. Tr. 154. The applications were denied initially and upon reconsideration. Tr. 212-15, 218-21. Administrative Law Judge (ALJ) Larry Kennedy held a hearing on August 20, 2015, Tr. 60-123, and issued an unfavorable decision on November 9, 2015, Tr. 37-52. The Appeals Council denied Plaintiff's request for review on December 5, 2016. Tr. 1-5. Plaintiff filed an action in the U.S. District Court for the Western District of Washington on February 3, 2017. Tr. 789. On December 5, 2017, U.S. District Judge John C. Coughenour remanded the claim for further proceedings. Tr. 793-99.

ALJ Kimberly Boyce held a remand hearing on October 1, 2019, Tr. 756-88, and issued an unfavorable decision on October 15, 2019. Tr. 728-45. Plaintiff did not request review by the Appeals Council and the Appeals Council did not assume jurisdiction of the claim; the ALJ's October 2019 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Tr. 725-26. Plaintiff filed this action for judicial review on January 22, 2020. ECF No. 1.

---

[1] Plaintiff later amended his alleged onset date to June 1, 2012. 762. The ALJ made inconsistent statements as to whether a prior application filed March 7, 2013 was being reopened and what period was under adjudication. *See* Tr. 729 (noting the amended alleged onset date and indicating adjudication was from July 25, 2013 due to a prior application); Tr. 744 (finding Plaintiff not disabled from January 1, 2010 through the date of the decision). On remand, the ALJ will clarify the precise period under adjudication.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 2

## STATEMENT OF FACTS

Plaintiff was born in 1980 and was 31 years old as of the amended alleged onset date. Tr. 743. He was diagnosed with fibromyalgia and chronic fatigue syndrome in his teens. Tr. 568, 607, 950. He did not complete high school due to medical condition-related absences, but did obtain his GED. Tr. 568. He has a limited work history, having worked in various restaurant positions and in a casino, and at one point attempted to make a career of acting in Los Angeles. Tr.105, 347, 770-71. He last worked in 2010 as a casino slot-machine attendant. Tr. 770.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards

were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 15, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 731.

At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, somatoform disorder, attention deficit disorder, depressive disorder, anxiety disorder, and personality disorder. *Id.*

///

///

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 732-33.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light exertion level work with the following limitations:

> He cannot climb ladders, ropes or scaffolds. He cannot work at unprotected heights or in proximity to hazards such as heavy machinery with dangerous moving parts. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can perform work in which concentrated exposure to extreme cold, heat, or vibration is not present. He can understand, remember, and carry out simple, routine tasks and follow short, simple instructions. He can perform work that requires little or no judgment, and can perform simple duties that can be learned on the job in a short period. He can cope with occasional work setting change and occasional, routine interaction with supervisors. He can work in proximity to coworkers, but not in a team or cooperative effort. He can perform work in a setting to which the general public is not admitted. Within these parameters, the claimant can meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior, and can persist, focus, concentrate, and maintain an adequate pace in two-hour increments.

Tr. 733-34.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a gambling cashier, slot cashier, kitchen food assembler, or waiter. Tr. 743.

At step five the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of mail clerk, office cleaner, and small parts assembler. 743-44.

///

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time through the date of the decision. Tr. 744-45.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly assessing Plaintiff's immune deficiency; (2) not properly assessing the medical opinion evidence; and (3) not properly assessing Plaintiff's allegations.

## DISCUSSION

**1.    Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting his subjective statements. ECF No. 17 at 21-26.

It is the province of the ALJ to make determinations regarding a claimant's subjective reports. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 734-35. The ALJ noted numerous factors that she found undermined Plaintiff's reports, including his past work experience with his conditions and inconsistent reports of why his work ended, normal findings on physical and mental exams, improvement with treatments, Plaintiff's devotion to unapproved treatment modalities and refusal of other treatments, and his activities. Tr. 735-39.

Plaintiff argues the ALJ selectively interpreted the record and drew conclusions that are inconsistent with the nature of Plaintiff's medical conditions. ECF No. 17 at 22-26. Defendant argues the ALJ reasonably interpreted the record and each of the proffered reasons was clear and convincing. ECF No. 18 at 4-8. The Court finds that the ALJ's offered reasons do not reach the clear and convincing standard.

*A. Past work*

The ALJ found Plaintiff's allegations of disabling pain and fatigue to be undermined by his past ability to work at substantial gainful employment, despite having been diagnosed with fibromyalgia and chronic fatigue syndrome since childhood. Tr. 735. The ALJ also noted Plaintiff's varying reports that he left his last employment in 2010 due to social problems, poor compliance with job requirements, or simply hating the work. *Id.*

Plaintiff argues there is no inconsistency in the various factors that contributed to his leaving the job, and asserts that his mental health contributed to his work termination and his disability. ECF No. 17 at 22. Defendant argues the ALJ reasonably interpreted the record as containing inconsistent statements about the ending of his past work, thereby undermining his subjective reports and

showing he stopped working in 2010 for reasons unrelated to his disability. ECF No. 18 at 5.

A claimant's reasons for leaving employment can support a rejection of his symptom statements. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). An ALJ also may rely on evidence that a claimant's condition "has remained constant for a number of years" and "has not prevented [the claimant] from working over that time." *Gregory v. Bowen*, 844 F.3d 664, 666-67 (9th Cir. 1988). However, in this case, the record does not support the ALJ's conclusion that these factors undermined Plaintiff's allegations of disability. Most importantly, Plaintiff stopped working in 2010, but did not allege disability until 2012. Therefore, his work and the reasons for stopping were remote in time to the relevant period in this claim. In 2013 when he was establishing care with a new primary provider, he reported his conditions had worsened over the years, and the last time he was working his fatigue made it harder and harder to fulfill his work duties. Tr. 559. Work that predates disabling symptoms is not inconsistent. *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017).

As to the various explanations for his work ending, none of the explanations are inconsistent. Plaintiff testified his last job in 2010 ended because he was getting too tired during the day and he wanted to try a job that he could do from home. Tr. 770. This is consistent with his reports to his providers that he was terminated due to not performing he duties because of fatigue. Tr. 559. That he also reported he hated the work is not inconsistent. Tr. 559. None of the factors identified by the ALJ regarding Plaintiff's past work undermine his present allegations of disability.

*B. Activities*

The ALJ found Plaintiff's activities contradicted his alleged limitations. Tr. 738-39. Specifically, the ALJ noted Plaintiff retained the ability to drive, prepare meals, read, and use a computer. *Id.* The ALJ also noted Plaintiff helped his sister

1 move in 2015 without overt weakness or a decline in energy, and that he had flown
2 to Los Angeles in 2013 to watch a friend's dog, despite his alleged intolerance for
3 sitting. *Id.*

4     Plaintiff argues that none of the activities identified by the ALJ are
5 inconsistent with Plaintiff's allegations, and that when he did engage in greater
6 activities, he would need several days to recover. ECF No. 17 at 26. Defendant
7 argues the ALJ reasonably concluded that a person with debilitating fatigue would
8 not be able to engage in the noted activities, particularly helping someone move
9 and traveling a long distance to dog sit. ECF No. 18 at 4-5.

10     A claimant's daily activities may support an adverse credibility finding if the
11 claimant's activities contradict his other testimony. *Orn v. Astrue*, 495 F.3d 625,
12 639 (9th Cir. 2007). However, some inconsistency must actually be present. "ALJs
13 must be especially cautious in concluding that daily activities are inconsistent with
14 testimony about pain, because impairments that would unquestionably preclude
15 work and all the pressures of a workplace environment will often be consistent
16 with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d
17 995, 1016 (9th Cir. 2014) *citing Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir.
18 1996) ("The Social Security Act does not require that claimants be utterly
19 incapacitated to be eligible for benefits, and many home activities may not be
20 easily transferable to a work environment where it might be impossible to rest
21 periodically or take medication."). None of the regular activities identified by the
22 ALJ are inconsistent with Plaintiff's claims of debilitating fatigue. He routinely
23 reported that he was able to drive to the grocery store, use his computer, and
24 prepare meals, but that these were the only things he would do throughout his day,
25 and that he would rest up in order to be able to attend appointments or run errands.
26 Tr. 74-76, 85, 414-17, 569, 576, 608, 612-13, 766, 949-51, 1060, 1064, 1067,
27 1304. The two incidents of greater activity, of helping his sister move and going to
28 Los Angeles are no more than a scintilla of evidence throughout a seven-year

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 9

relevant period, and do not constitute substantial evidence upon which to challenge Plaintiff's allegations.

*C. Treatments*

The ALJ found Plaintiff's allegations of disabling impairments to be undermined by his treatment, including at times receiving no treatment, pursuing questionable or unproved modalities, and declining mental health treatment. Tr. 735-38.

Plaintiff argues the times when he did not receive treatment were when he did not have health insurance. He additionally notes that traditional treatments had not helped, and the unconventional approach recommended by Dr. Teitelbaum was okayed by Dr. Lien, who noted that even if it was just a placebo, anything that helped was worth trying. ECF No. 17 at 23-24. With respect to mental health treatment, Plaintiff argues he was justified in declining medication, as he had had previous intolerable side effects from mental health medications, and that he had previously been told his mental state was largely entwined with his physical condition, and thus his efforts to treat his physical symptoms would also help his mental health. *Id.* at 25-26. Defendant does not address this rationale from the ALJ, other than noting the ALJ's findings that Dr. Teitelbaum never actually met Plaintiff and PA-C Hirst questioned the treatment protocol. ECF No. 18 at 6-7.

Unexplained or inadequately explained reasons for failing to seek medical treatment or follow a prescribed course of treatment can cast doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, the fact that Dr. Teitelbaum's treatments were unconventional or unproven does not mean they were unreasonable. Dr. Lien agreed to be Plaintiff's local provider to prescribe medications and order labs, and conferred with Dr. Teitelbaum on his treatment protocols. Tr. 947, 992-96, 1017-18. Plaintiff experienced some improvement in his conditions by following Dr. Teitelbaum's treatment plan; therefore, it was at least somewhat helpful. The Court cannot find Plaintiff's

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 10

adherence to a helpful treatment to be a clear and convincing reason to discount his allegations of ongoing problems.

With respect to Plaintiff's lack of mental health treatment, an ALJ may not find a claimant's statements unsupported on this basis without first considering the reasons why he has not sought more treatment. Social Security Ruling 16-3p. The Ruling notes such possibilities as lack of access due to finances, the individual may have found ways to cope by minimizing their activities, having intolerable side effects from treatments, or being advised there is no effective treatment to pursue. *Id.* The record indicates Plaintiff had previously had intolerable side effects from mental medications, and adamantly did not wish to pursue them further. Tr. 1091-94. Plaintiff also reported he had been previously told that he was not experiencing a psychological disorder apart from his difficulty dealing with his physical problems, and thus believed pursuing physical treatments would address his mental health as well. Tr. 1091, 1093. Finally, even if Plaintiff were mistaken in these beliefs, the Ninth Circuit has recognized that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The Court therefore finds the course of treatment Plaintiff pursued does not detract from his allegations of disabling impairments.

*D. Improvement with treatment*

Despite finding Plaintiff's treatment questionable, the ALJ found his symptoms improved, thus undermining his allegations. Tr. 737-38. Plaintiff argues that while he had some minimal relief, his conditions never improved to the point where he was able to work. ECF No. 17 at 23. Defendant argues the ALJ reasonably found the evidence shows Plaintiff's conditions were controlled by treatment and thus not disabling. ECF No. 18 at 6-7.

///

///

While evidence that an individual's impairments are readily controllable and improve with treatments may undermine complaints of ongoing impairment, the Ninth Circuit has taken issue with ALJs citing selective evidence of improvement:

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Furthermore, improvement in symptoms does not necessarily equate to an elimination of symptoms.

The Court finds the ALJ's discussion of Plaintiff's improvement with treatment is not supported by substantial evidence and omits the context of Plaintiff's ongoing complaints of debilitating fatigue, despite showing some improvement in some of his symptoms. The ALJ noted Plaintiff's reports of improvement on Dr. Teitelbaum's protocol and his reports to Dr. Vosloo of improved energy and other improved symptoms. Tr. 736-37. However, throughout the relevant period Plaintiff was reporting only minimal improvement, feeling slightly better but still having significant limits, or having fluctuations in his symptoms depending on his activity level, which was never substantial. Tr. 777-78, 1044, 1049, 1064, 1067, 1069, 1087, 1092, 1121, 1252, 1260, 1266, 1295, 1298, 1304-05, 1307, 1309-10, 1313-14, 1316. The record does not support a finding that Plaintiff's impairments substantially improved or were controllable with medication and treatment.

### E. Objective findings

The ALJ found Plaintiff's subjective reports of physical and mental limitations to not be supported by the objective record, which showed largely normal exam findings. Tr. 735-38. Plaintiff argues many of the normal findings

cited by the ALJ are not related to Plaintiff's primary complaints of fibromyalgia and chronic fatigue syndrome, and points to Dr. Teitelbaum and Dr. Lien's explanations of the relevant findings and why many patients with these conditions may present with normal exam findings. ECF No. 17 at 22. Defendant argues the ALJ appropriately pointed to a host of unremarkable test results that contradict Plaintiff's claims of debilitating impairments, and asserts Plaintiff is asking the court to reinterpret the medical findings. ECF No. 18 at 6-7.

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence). Because none of the ALJ's other reasons are supported by substantial evidence, the lack of supportive objective findings alone is insufficient to meet the clear and convincing standard.

Furthermore, the Court takes note that fibromyalgia and chronic fatigue syndrome are not conditions that generally present with extensive objective findings. *See generally*, Social Security Ruling 12-2p; Social Security Ruling 14-1p; *Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir. 2017). It is not clear that the normal or unremarkable exam findings identified by the ALJ, such as intact strength and no neurological deficits, have any bearing on the existence or severity of Plaintiff's conditions, and the ALJ cited to no medical source that indicated as much. Notably, Dr. Teitelbaum provided a detailed letter explaining the nature of chronic fatigue syndrome and fibromyalgia, their lack of presentation of traditional objective physical exam findings, and noting the objective testing and lab results that he found supportive of Plaintiff's condition. Tr. 690-93.

On remand the ALJ will reassess Plaintiff's subjective symptom reports.
///

## 2. Medical Opinion Evidence

Plaintiff asserts the ALJ improperly evaluated the medical opinion evidence by offering insufficient reasons for rejecting the opinions from Dr. Lien, Dr. Teitelbaum, Dr. Cole, Dr. Mitchell, and naturopath Coffin. ECF No. 17 at 8-20. He also asserts the ALJ gave undue weight to the state agency reviewing and examining doctors. *Id.* at 20-21.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating their interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer their conclusions, they "must set forth [their] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

An ALJ may discount the opinion of an "other source," such as a nurse practitioner, if they provide "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The Court notes the ALJ relied on similar rationale in rejecting some of the treating doctors' opinions as she did for finding Plaintiff's subjective reports to be unreliable, such as his minimal daily activities, various normal objective findings on exam, and some notes of improvement with treatment. Tr. 739-42. In light of the ALJ's improper use of these factors in her assessment of Plaintiff's subjective reports, the ALJ must also reevaluate the medical opinion evidence.

The Court also takes note that the ALJ afforded the most weight to opinions that were provided in 2013 and 2014, prior to much of Plaintiff's treatment. Tr. 741-43. Those opinions did not find fibromyalgia and chronic fatigue to be severe

impairments, and assessed no physical limitations. Tr. 201, 572, 616. It is therefore unclear how these opinions support the ALJ's findings. Upon remand, the ALJ shall reassess the medical opinions in light of the longitudinal record and updated treatment notes, and obtain any additional medical opinions or experts as needed.

**3.   Plaintiff's immune deficiency**

Plaintiff argues the ALJ erred in failing to address his systemic immune deficiency, which he argues has contributed to his chronic fatigue and left him disabled. ECF No. 17 at 5-6. He asserts this was not a harmless error, as his recurrent infections contributed to his chronic illness and would result in missed days. *Id.* at 7. Plaintiff also argues the ALJ should have assessed Plaintiff's conditions under Listing 14.07A for infections resistant to treatment. *Id.* Defendant asserts Listing 14.07A did not exist in the regulations in effect at the time of the ALJ's decision, and argues that the ALJ extensively addressed Plaintiff's limitations and the medical reports discussing his immune deficiencies. ECF No. 18 at 3.

The Court finds that, though Listing 14.07A was in effect at the time of the ALJ's decision,[2] the ALJ did not err in failing to discuss it. Listing 14.07A requires:

---

[2] Defendant cites to 20 C.F.R. Part 404, Subpart P, App. 1, Listings 14.00 (Immune System Disorders) for his assertion that there is no Listing 14.07A in the current regulations. This is incorrect. The Appendix does include Listing 14.07A for treatment resistant infections. The Court's search of the Federal Regulations, SSA's website, and Westlaw all return the same result. Additionally, the SSA Program Operations Manual System (POMS) lists obsolete versions of the listings, with the most recent revision to the Immune System Listings occurring in March 2017. *See* POMS DI 34134.000 et seq, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0434134000

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 15

> One or more of the following infections. The infection(s) must either be resistant to treatment or require hospitalization or intravenous treatment three or more times in a 12-month period.
>
>     1. Sepsis; or
>     2. Meningitis; or
>     3. Pneumonia; or
>     4. Septic arthritis; or
>     5. Endocarditis; or
>     6. Sinusitis documented by appropriate medically acceptable imaging.

20 C.F.R. Part 404, Subpart P, App. 1, Section 14.00. Plaintiff argues his continued treatment for mycoplasmic and chlamydial pneumonia without response to treatment indicates the listing was met. ECF No. 17 at 7. He further asserts he had chronic sinusitis despite medications. *Id.*

    The Court finds the record is not sufficient to find the listing to be met or equaled. The record does not indicate that Plaintiff had ongoing pneumonia, and there was some debate amongst his treating providers as to whether viral infection was truly the source of his fatigue and whether ongoing treatment with antibiotics and antifungals was truly medically necessary. Tr. 1033, 1063. There is no medical opinion in the file indicating that the listing is met or equaled. The ALJ did not err in not discussing this listing.

    The ALJ also did not err in failing to find Plaintiff's immune deficiency to be an independent medically determinable impairment. Step two was resolved in Plaintiff's favor and the ALJ continued with the five-step analysis. However, as the claim is being remanded for further proceedings, the ALJ shall reconsider the evidence and any additional treatment records submitted, and shall complete the five step process in determining whether Plaintiff is disabled.

///
///

# CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence and must be reevaluated. On remand, the ALJ shall reevaluate Plaintiff's subjective complaints and the medical opinion evidence, and make new findings on each of the five steps in the sequential process, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

///
///
///
///
///
///

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED November 18, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE